## GILROY V. ALIS.

1. **Equity:** MISTAKE IN LAND EXCHANGE. A court of equity will not decree a specific performance of an agreement to exchange lands according to a measurement which proved to be erroneous, and which gave plaintiff a much larger portion out of defendant's land than defendant got out of his, even though the parties took possession of and fenced the land accordingly, if done in ignorance of the mistake.

2. —— REMEDY. In such case plaintiff might elect to have the contract enforced according to the true boundary lines, or have it rescinded.

*Appeal from Clinton District Court.*

`THURSDAY, APRIL 18.`

THIS is a suit in equity to enforce a specific performance of a contract for exchange of lands. There was a decree for the plaintiff in the District Court, and the defendant appeals.

*A. R. Cotton* and *Chas. M. Dunbar* for the appellant.

*Wm. E. Leffingwell* for the appellee.

COLE, J.—The plaintiff in this case was the owner of the north-east quarter of the north-east quarter of section fifteen, township eighty-three, range one, east, and the defendant was the owner of the north-west quarter of the north-east quarter of the the same section, township and range, each containing forty acres. About the year 1855 they agreed upon an exchange of between four and five acres of the one for about the same quantity in the other. They went upon the premises at the point which they supposed was the south-west corner of the north-east quarter of the north-east quarter, and measured off with a rope the land each was to have.

*1. EQUITY: mistake in land exchange.*

They ran north on the line between the two forties, as they supposed, twelve rods (or, as defendant says, eleven rods); thence west twelve rods; thence north-east, to a point in the north line of the forty, two rods (or, as plaintiff says, two and a half rods) west of the north-east corner of the north west quarter of the north-west quarter; thence along the north line to said corner; and thence, on the line dividing the two forties, to the place of beginning. This embraced the land that plaintiff was to get from defendant.

They then commenced at the same point as before, and ran north twelve rods; thence south-easterly to the south-east corner of the north-east quarter of the north-east quarter, and thence west to the place of beginning; this embraced the land that defendant was to get from the plaintiff. Now, if they had commenced their measurement at the true corner, each party would have received about the same quantity of land. The parties severally took possession of the parcels described, and fenced the same, on or near the lines as measured. Such possession was continued until about 1864, when the defendant discovered that the place of beginning was not at the true corner, but at the corner as surveyed by one Spaulding, some years before this trade, and which was four or five rods south, and about one rod west of the true corner, as shown by a recent survey made by the county surveyor.

This mistake had the effect to give the plaintiff about five acres of the defendant's land, while the defendant only got about one acre of the plaintiff's land. The following map shows the premises and points of controversy.

Gilroy v. Alis.

The N. E. ¼ of the N. E. ¼, which was plaintiff's land, is shown by the heavy black lines according to the survey of Hart.  The N. W ¼ of N. E. ¼, which was defendant's, is shown by the same kind of lines on the left or west of plaintiff's.  The dotted lines show the Spaulding survey, by which, the plaintiff claims the trade was made.  The small black lines in the N. W. ¼ show the boundary of the land, 4 $\frac{36}{100}$ acres, plaintiff got from the defendant by the decree of the District Court.

The small black line in the N. E. ¼ shows the land, 1 $\frac{13}{100}$ acres, defendant gets of plaintiff by the decree of the District Court.  The last mentioned small black line extended down to the dotted line, or Spaulding survey, and thence, with the dotted line, west and north, shows the land the parties expected defendant would get by the exchange.

A, shows the beginning place of measuring.

In 1864 the defendant learned of the mistake, and then tore down and removed the plaintiff's fence from the land

in the north-west quarter; and also his own fence in the north-east quarter. The plaintiff afterward brought this suit to compel the specific performance of the trade, having first tendered a deed to defendant for the land plaintiff was to let him have. But the deed contained the description as "according to Spaulding's survey."

The defendant refused the deed tendered, but in his answer offers to execute the trade according to the true survey, and tenders his deed accordingly, or he is willing to rescind entirely. Both of these offers the plaintiff rejects.

It is clear to our minds that the defendant agreed to convey the portion of his land to the plaintiff, in consideration of receiving a like portion of the plaintiff's land, and not in consideration of any partiality or fancy he had for "Spaulding's survey." The plaintiff swears positively that both he and defendant supposed that the place of beginning was the true corner.

While the fact that the respective parties built their fences upon the lines, as claimed by the plaintiff, in the absence of mistake or fraud, would be a very strong and controlling fact between the parties, as to the correct location of those lines, yet, when the mistake is so clearly proven as in this case, it entirely destroys the force of that fact. *Wynne* v. *Alexandre*, 7 Iredel, 237; *Menkins* v. *Blumenthal*, 27 Mo. (6 Jones), 198; *Canoway* v. *Cary*, 2 Jones' Law (N. C.), 170; *Gray* v. *Couvillion*, 12 Louisiana, 730.

In our opinion the evidence establishes a mistake, and to enforce the contract as claimed by the plaintiff would 2. —— remedy. effectuate gross injustice upon the defendant. Under the circumstances, however, the plaintiff is entitled to his election, either to have the contract enforced by boundaries to be fixed according to the true corner and lines of original government survey, or to have the

contract rescinded entirely. The costs of this suit will be paid by the plaintiff, but any and all costs and expenses hereafter incurred in ascertaining the true corner and lines, in case the plaintiff elects to have the contract as above, will be borne equally by the parties. If there' has been any material waste committed by either party, over the value of the use by the other, upon the land of the other, in cutting and removing timber, or otherwise, in case the plaintiff elects to rescind, the District Court will adjust the same upon equitable principles.

Reversed.